**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------x

NATIONAL   ASSOCIATION   OF   TOBACCO
OUTLETS, INC., NEW YORK ASSOCIATION OF
CONVENIENCE       STORES,       BODEGA
ASSOCIATION OF THE UNITED STATES, INC.,
LORILLARD   TOBACCO   COMPANY,   R.J.
REYNOLDS  TOBACCO  CO.,  INC.,  PHILIP
MORRIS USA INC., U.S. SMOKELESS TOBACCO
BRANDS INC., AMERICAN SNUFF COMPANY,
and JOHN MIDDLETON COMPANY,

                                          Plaintiffs,

-against-

CITY  OF  NEW  YORK,  NEW  YORK  CITY
COUNCIL, NEW YORK CITY DEPARTMENT OF
HEALTH  AND  MENTAL  HYGIENE,  NEW  YORK
CITY  DEPARTMENT  OF  CONSUMER  AFFAIRS,
NEW YORK CITY DEPARTMENT OF FINANCE,
BILL DE BLASIO, in his official capacity as Mayor of
New York City, MELISSA MARK-VIVERITO, in her
official capacity as Speaker of the New York City
Council, DR. MARY BASSETT, in her official
capacity as Commissioner of the New York City
Department of Health and Mental Hygiene, ALBA
PICO, in his official capacity as First Deputy
Commissioner of the New York City Department of
Consumer Affairs, and BETH E. GOLDMAN, in her
official capacity as Commissioner of the New York
City Department of Finance,

                                       Defendants.

-----------------------------------------------------------------------------x

14 CV 0577 (TPG)(JCF)

## DECLARATION

**LILIANNA GEKHTIN**, declares, under penalty of perjury, pursuant to 28 USC § 1746,  that

the following is true and correct:

       1. I am the Chief Financial Officer for the New York City Department of

Consumer Affairs ("DCA"), one of the named defendants in this matter.  I have been employed

by DCA since 2009 and have held my current position since last year.

1

2.  As Chief Financial Officer, I oversee the fiscal services division, accounts payable and receivable, procurement, budget, and collections.  In addition, I oversee the agency's participation in the New York State Youth Tobacco Enforcement Program, established by the New York State Department of Health ("NYSDOH") to implement the Adolescent Tobacco Use Prevention Act ("ATUPA"), including the compiling and filing of DCA's required quarterly reports.

3.  ATUPA, among many other things, prohibits the sale of tobacco products to individuals under eighteen years of age.

4.  Pursuant to a contract between DCA and NYSDOH, DCA is responsible for enforcing ATUPA in New York City, which includes:  "conducting unannounced compliance checks of retail tobacco retailers and vendors using underage youth; educating facility operators; responding to public inquiries; responding to complaints about non-compliance; initiating enforcement against violators; [and] fulfilling all program reporting requirements."  Exhibit 1, Work Plan.

5.  To effectuate these responsibilities, DCA receives an annual ATUPA grant from New York State of approximately two million dollars.  However, the grant money does not cover the entire cost to DCA of enforcing ATUPA.  Under the terms of the grant, DCA must conduct 9,500 unique unannounced inspections of active tobacco dealers.  In other words, DCA must inspect at least 9,500 different active tobacco dealers during the grant year.[1]  One thousand of these inspections must be follow-up inspections of establishments that were found guilty for a sale to a minor within the last three years.

6.  DCA's Tobacco Enforcement Unit is responsible for conducting the unannounced inspections of retail tobacco dealers for sales to minors. The Tobacco Enforcement Unit consists of twenty-four employees, including eleven inspectors, two supervising inspectors

---

[1] As discussed below, DCA typically conducts far more than the required number of inspections.

and one senior supervising inspector, all of whom work full-time. In addition, DCA pays minors between the ages of 15 and 17 to attempt a purchase of tobacco products.

7.   The inspection team consists of two inspectors in plainclothes who are paired with one or two minors. The inspectors accompany the minor(s) to an establishment to ensure the safety of the minor(s). The inspectors will wait in another part of the store while the minor attempts to make a purchase. If the minor is asked his or her age during the proposed transaction, he or she is instructed by DCA to answer honestly, to end the proposed transaction, and no violation is recorded. A violation is only issued if an actual sale occurs.

8.   DCA issues charges, denominated as Notices of Hearing/Violation to retailers that sell a tobacco product to a minor. If the retailer is found guilty after a hearing or pleads guilty through a settlement, the retailer is assessed two points against its New York State Certificate of Registration ("State Registration").[2] If a retailer accumulates three points within a three year period, the retailer is referred to NYSDOH and its State Registration is suspended for a six month period. DCA is then required to re-inspect these establishments within ninety days of the suspension date to ensure that they are not selling tobacco products without a State Registration.[3] If a sale is observed, the entity is reported to the State for permanent revocation of its State Registration.

9.   DCA keeps detailed records on the total number of active retailers selling tobacco products, including, but not limited to, the number of inspections conducted, the number and type of violations issued, and the disposition of each violation. DCA also tracks tobacco retailers that have accumulated three or more points due to sale to minor violations.

---

[2] If the establishment presents a certificate indicating that it trained its employees on the law regarding sales to minors prior to violation issuance, only one point is assessed.

[3] These inspections do not count towards the required 9,500 inspections.

10. DCA enters inspection, adjudication activities and payment information into a State database within ten business days after the completed action.

11. Each quarter, DCA is also required to submit to the State a narrative and summary report of all inspection, adjudication and payment information that occur during that quarter.

12. So far during Grant Year 16 (April 1, 2013 – March 31, 2014), DCA conducted 9,247 undercover inspections for sale of tobacco to minors, and found 613 sales made to minors.

13. During Grant Year 15 (April 1, 2012 to March 31, 2013), DCA conducted 11,614 undercover inspections for sale of tobacco to minors, and found 815 sales made to minors.

Dated:      New York, New York
            February 27, 2013

                                        LILIANNA GEKHTIN