UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL ASSOCIATION OF
TOBACCO OUTLETS, INC., et al.,

                    Plaintiffs,

            v.

CITY OF NEW YORK, et al.,

                    Defendants.

14 Civ. 00577

**OPINION**

        Plaintiffs in this case—a group of tobacco manufacturers and retailers—seek a declaratory judgment that a recently enacted New York City Ordinance that prohibits them from selling or offering to sell cigarettes and tobacco products below the listed, or advertised, price (1) violates their rights under the First Amendment of the United States Constitution and the Free Speech Clause of the New York State Constitution, (2) is preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331, and (3) is preempted by New York State Public Health Law, Article-F-Regulation of Tobacco Products, Herbal Cigarettes and Smoking Paraphernalia; Distribution to Minors, § 1399-bb. Plaintiffs also request a permanent injunction again the city's enforcement of the ordinance.  The parties have cross-moved for summary judgment.

        The court grants the city's motion for summary judgment in its entirety.

1

**Facts**

On October 30, 2013, the New York City Council passed Local Law 1021-A-2013 and former Mayor Michael Bloomberg signed it into law on November 19, 2013, whereupon it became Local Law 97 of 2013 ("Local Law 97").  The provisions in Local Law 97 work together to create higher prices for cigarettes and tobacco products in New York City.

In its legislative findings, the City Council detailed its reasons for passing Local Law 97.  See Decl. of Nicholas R. Ciapettta, Ex. A.  The City Council highlighted the well-known health risks associated with tobacco use and explained that it is the leading cause of preventable death in New York City. Id. at 1.  Additionally, the City Council noted that smoking-related illnesses cost New Yorkers billions of dollars annually in health care costs and lost productivity.  Id.  As a result of the significant human and economic costs associated with tobacco use, over the years, the City Council has taken steps both to reduce tobacco use among adults and to prevent youths from beginning to use tobacco products.  Id. at 1-2.  The City Council explained that through a variety of programs, it succeeded in reducing the prevalence of adult tobacco use from 21.5% in 2002 to 15.5% in 2012.  Id. at 2.  Similarly, youth smoking rates declined from 17.6% in 2001 to 8.5% in 2007.  Id.  However, youth smoking rates have plateaued since 2007.  Id.

Consequently, given that tobacco use persists among youths and adults, the City Council elected to take further action to lower smoking rates and

passed Local Law 97. The City Council explained that numerous studies have demonstrated that high tobacco prices reduce consumption among both youths, who are especially price-sensitive, and adults. For instance, a 10% increase in cigarette prices reduces demand among adult smokers by 3-5% and among youth smokers by 7%. Id. In all, high tobacco prices reduce the prevalence of tobacco use, the likelihood of trying tobacco for the first time, the average number of cigarettes consumed per smoker, the initiation of daily smoking, and the initiation of daily heavy smoking. Id.

Local Law 97 works to achieve the goal of raising the price of cigarettes and tobacco products and thus, reducing tobacco consumption in the following four ways: (1) reducing the illegal evasion of cigarette excise taxes; (2) prohibiting the sale of tobacco products below the listed, or advertised, price; (3) creating a price floor for a package of cigarettes and little cigars; and (4) requiring inexpensive cigars to be sold in packages of no fewer than four.

Plaintiffs[1] only challenge a narrow provision of Local Law 97—namely, N.Y.C. Admin. Code § 17-176.1 (b) and § 17.176.1(c) (collectively, "the ordinance"). The ordinance prohibits the sale and the offer to sell cigarettes and tobacco products below the listed, or advertised price. The ordinance

---

[1] Plaintiffs are a group of tobacco manufacturers and retailers, including the National Association of Tobacco Outlets, Inc., the New York Association of Convenience Stores, the Bodega Association of the United States, Inc., Lorillard Tobacco Company, R.J. Reynolds Tobacco Co., Inc., Philip Morris USA Inc., U.S. Smokeless Tobacco Brands Inc., American Snuff Company, and John Middleton Company.

defines listed price "as the price listed for cigarettes or tobacco products on their packages or on any related shelving, posting, advertising or display at the place where the cigarettes or tobacco products are sold or offered for sale, including all applicable taxes." N.Y.C. Admin. Code § 17-176.1(a). The two challenged provisions—§ 17-176.1(b) and § 17-176.1(c)—contain the same prohibitions and only differ in so far as § 17.176.1(b) regulates cigarettes and § 17.176.1(c) regulates tobacco products.[2]

In particular, § 17-176.1(b) and § 17-176.1(c) provide that no retailer may:

1. Honor or accept a price reduction instrument in any transaction related to the sale of cigarettes [or tobacco products] to a consumer;

2. Sell or offer for sale cigarettes [or tobacco products] to a consumer through any multi-package discount or otherwise provide to a consumer any cigarettes [or tobacco products] for less than the listed price in exchange for the purchase of any other cigarettes [or tobacco products] by the consumer;

3. Sell, offer for sale, or otherwise provide any product other than cigarettes [or tobacco products] to a consumer for less than the listed price in exchange for the purchase of cigarettes [or tobacco products] by the consumer; or

4. Sell, offer for sale, or otherwise provide cigarettes [or tobacco products] to a consumer for less than the listed price.

---

[2] The ordinance defines "tobacco product" as any product which contains tobacco that is intended for human consumption, including any component, part, or accessory of such product. Tobacco product shall include, but not be limited to, any cigar, little cigar, chewing tobacco, pipe tobacco, roll-your-own tobacco, snus, bidi, snuff, tobacco-containing shishas, or dissolvable tobacco product. Tobacco product shall not include cigarettes or any product that has been approved by the United States food and drug administration for sale as a tobacco use cessation product or for other medical purposes and that is being marketed and sold solely for such purposes. N.Y.C. Admin. Code § 17-176.1(a).

4

N.Y.C. Admin. Code § 17-176.1(b); § 17.176.1(c) (relevant language added in brackets).

In the ordinance, the City has prohibited common methods that tobacco manufacturers and retailers undertake to sell cigarettes and tobacco products below the listed price.  In practice, these pricing practices often play out in the following manner:

1. §17.176(b)(1).  A consumer receives a coupon in the mail from the Lorrilard Tobacco Company offering $1 off of the listed price for a pack of Newport cigarettes.  The consumer may redeem the coupon at any store that sells Newport cigarettes.

2.  §17.176(b)(2).  A retailer provides a promotion whereby upon purchasing two packs of Marlboro cigarettes, a consumer receives $2 off of the listed price for purchasing a third pack of Marlboro cigarettes.

3. §17.176(b)(3).  In exchange for purchasing a pack of Camel cigarettes, a retailer provides a consumer with a free, or discounted, lighter bearing the Camel logo.

4. §17.176(b)(4).  A retailer provides a one-day sale where all American Spirit cigarettes are sold at $1 off of the listed price.

These examples merely provide a sample of the many ways in which tobacco manufacturers and retailers employ these discount pricing practices.

The practical effect of the ordinance is that by prohibiting tobacco manufacturers and retailers from utilizing these discount pricing practices, the city has made it so that tobacco manufacturers and retailers may only sell cigarettes and tobacco products at the listed price.  Tobacco manufacturers and retailers will no longer be able to employ any pricing practices to generate sales below the listed price.  Naturally, tobacco retailers may change the listed

price for cigarettes and tobacco products and a City implementing rule for the ordinance, makes clear that retailers may "inform[] customers that the listed price has changed." R.C.N.Y. § 13-02(d)(ii).  But as a result of the ordinance, this method—changing the listed price—is the only manner in which manufacturers and retailers will be able to effect the price of cigarettes and tobacco products.  Moreover, Local Law 97 has established a price floor for cigarettes and little cigars of $10.50.[3]  Thus, at no may point may retailers reduce the price below this point.  See N.Y.C. Admin. Code § 17.176.1(d).[4]

In an effort to detail the policy reasons for the ordinance in particular, as opposed to Local Law 97 writ large, discussed *supra* at 2-3, the city submitted two affidavits by Dr. Mary T. Bassett, Commissioner of the New York City Department of Health and Mental Hygiene.  Dr. Bassstt reiterated the city Council's fundamental premise that tobacco users are price-sensitive.  See Dr. Bassett Decl. in Opposition to Motion for Preliminary Injunction, ¶¶ 3, 34-41.  With respect to the challenged ordinance, Dr. Bassett explained that "[n]umerous studies and tobacco industry documents show that the tobacco industry manipulates prices of tobacco products through various discounting schemes to encourage price-conscious customers like teenagers and low-income smokers to buy their addictive and deadly products." Id. at ¶ 4.  Tobacco manufacturers and retailers, according to Dr. Bassett, utilize these pricing practices in order to offset the impact of tobacco tax increases and

---

[3] Plaintiffs do not contest this provision of Local Law 97.
[4] § 17.176.1(d) only sets a price floor for cigarettes and little cigars.  There is no price floor for all other tobacco products.

other tobacco control efforts.  Id. at ¶ 48.  Dr. Basset went on to explain that there is a "pronounced association between the availability of price-reducing strategies and the progression from experimentation with cigarettes to regular use, and ultimately, addiction."  Id. at ¶ 5.  Accordingly, given that these pricing practices result in increased tobacco use, especially among youths, Dr. Bassett recommended that the city undertake the restrictions in the ordinance to reduce tobacco consumption in New York City.  Id. at ¶¶ 63-65.

### Procedural Posture

On January 30, 2014, plaintiffs filed their complaint.  Plaintiffs allege that the ordinance (1) violates their rights under the First Amendment of the United States Constitution and the Free Speech Clause of the New York State Constitution, (2) is preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331, and (3) is preempted by New York State Public Health Law § 1399-bb.

On February 16, plaintiffs sought a temporary restraining order and preliminary injunction to enjoin the city from enforcing the challenged provisions of Local Law 97—N.Y.C. Admin. Code § 17-176.1(b) and § 17.176.1(c)—pending the final resolution of this litigation.  The ordinance was originally scheduled to go into effect on March 19, 2014.

The court held a conference on the motion for a preliminary injunction on March 14, 2014, where the parties jointly suggested that the case proceed to summary judgment.  The parties agreed that there are no factual disputes in

the litigation and as such, that the court should resolve the case on summary judgment.  Accordingly, on March 19, 2014, the parties filed a stipulation staying enforcement of the challenged provisions of Local Law 97 until May 23, 2014.  See Order, Mar. 19, 2014, ECF No. 55.

On March 20, 2014, the city filed an answer to the complaint in which it denied all of plaintiffs' allegations.

The parties filed their motions for summary judgment on April 25.  The parties filed their reply briefs on May 2.

On May 6, the Court held a hearing on the cross-motions for summary judgment.  At the conclusion of the hearing, the Court issued an order (1) directing the parties to submit supplemental briefing on the issue of whether the ordinance is preempted by New York State Public Health Law § 1399-bb and (2) extending the stay of enforcement of the ordinance until June 20, 2014.  See Order, Apr. 23, 2014, ECF No. 83.  The parties completed supplemental briefing on June 5, 2014.

## Standard of Review

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Id.  The movant has the burden of showing that no genuine factual dispute exists.  Id.  However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  Id. at 249.  "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration."  Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011).

## Discussion

### First Amendment

The court first considers plaintiffs' constitutional challenge that the ordinance violates their rights under the First Amendment of the United States Constitution and the Free Speech Clause of the New York State Constitution. Plaintiffs allege that the ordinance unconstitutionally prohibits commercial speech and cannot survive strict scrutiny under Central Hudson Gas & Electric Corporation v. Public Service Commission, 447 U.S. 557 (1980).  More specifically, plaintiffs allege that through prohibiting the sale and the offer to sell cigarettes and tobacco products below the listed price, the ordinance impermissibly restricts plaintiffs' ability to communicate discount pricing and deal information to consumers.  Plaintiffs claim that they use coupons and discount offers to tell their consumers that they are "getting a deal" if they

9

purchase the product at a particular price, to encourage them to purchase a particular brand, or to make their purchase at a particular location.

In National Association of Tobacco Outlets, Inc. v. City of Providence, Rhode Island, 731 F. 3d 71 (1st Cir. 2013), the First Circuit considered a similar challenge to the one presently before this court.  The First Circuit reviewed and upheld a Providence, Rhode Island city ordinance that prevented the city's tobacco retailers from selling tobacco products at a discount through coupons and multi-pack discounts.  Id. at 74.  The Providence ordinance is not as expansive as the New York City ordinance presently before this court, in that it does not prohibit the receipt of non-tobacco goods in exchange for tobacco purchases or contain a general prohibition on the sale of cigarettes and tobacco products below the listed price.  Nevertheless, in its consideration of the constitutionality of the Providence ordinance, the First Circuit set forth well-reasoned arguments that this court finds to be very persuasive and relevant to its analysis and to its determination that the challenged New York City ordinance lawfully regulates pricing, not speech, and thus, does not violate the First Amendment.

As a general matter, the Supreme Court has held that pricing information concerning lawful transactions is protected speech.  See Virginia State Pharmacy Board v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 761-764 (1976).  Thus, tobacco manufacturers and retailers have an

undisputed First Amendment right to advertise the listed price of their
products to their consumers.

In National Association of Tobacco Outlets, the First Circuit found that
the challenged ordinance did "not restrict the dissemination of pricing
information generally." 731. F.3d at 77.  The court provided the following
explanation:

> Nothing in the Price Ordinance restricts retailers or anyone else from
> communicating pricing information concerning the lawful sale price of
> cigarettes.  Rather, the ordinance has more limited objectives.  It (1)
> restricts the ability of retailers to engage in certain types of pricing
> practices, namely accepting or redeeming coupons for tobacco
> purchases, and selling tobacco products by way of multi-pack
> discounting, and (2) bars retailers from offering to engage in these
> prohibited pricing practices.  See Providence, R.I., Code of Ordinances
> Sec. 14-303.  Neither type of regulation is barred by the First
> Amendment.

Id.  Thus, the First Circuit determined that pricing practices, such as accepting
coupons and providing multi-pack discounts, are not protected by the First
Amendment because they do not communicate pricing information to
consumers.  Id.

In arriving at its decision, the First Circuit largely relied upon 44
Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1986), where a majority of the
Justices, in striking down a contested ban on liquor price advertising, made
clear that price regulations and other forms of direct economic regulation do
not implicate First Amendment concerns.  National Association of Tobacco
Outlets, Inc., 731 F.3d at 77.  In relying upon 44 Liquormart, Inc., a plurality
opinion, the First Circuit explained that "[i]n determining the views of the court

as a whole, we may aggregate the views expressed in the various separate opinions." Id. (citing League of the United Latin American Citizens v. Perry, 548 U.S. 399, 413-414 (2006)).

The principal opinion in 44 Liquormart, Inc. (representing the views of four justices) explained that while the statute at issue was an unconstitutional restriction on speech, "alternatives forms of regulation that would not involve any restriction on speech" could have advanced the state's interest in reducing alcohol consumption.  617 U.S. at 507 (Stevens, J.).  For example, the Court explained that "higher prices can be maintained either by direct regulation or by increased taxation" and that "per capita purchases could be limited." Id. at 507 (Stevens, J.).  Justice O'Connor, joined by three justices, in this respect agreed with the principal opinion and explained that the state had "other methods at its disposal" to discourage liquor consumption that included "establishing minimum prices." Id. at 530 (O'Connor, J., concurring in the judgment).  Justice O'Connor explained that these alternative measures would have accomplished the state's goal of reducing alcohol consumption "without intruding on sellers' ability to provide truthful, nonmisleading information to consumers." Id.

These views, expressed by a majority of the Court, demonstrate that price regulations designed to discourage consumption of a potentially harmful product do not violate the First Amendment so long as they do not preclude the effected retailers' ability to provide truthful, nonmisleading information

the regulated product to consumers.  In <u>National Association of Tobacco</u>

<u>Outlets</u>, the First Circuit applied this general principle to tobacco regulation

and found that the prohibition of discounting practices, such as coupon

redemption and multi-pack discounts, did not violate the First Amendment.

<u>Id</u>. at 77.

This court agrees.  Under the ordinance, retailers may continue to

communicate the listed price "for cigarettes or tobacco products on their

packages or on any related shelving, posting, advertising or display at the place

where the cigarettes or tobacco products are sold or offered for sale."  N.Y.C.

Admin. Code § 17-176.1(a).  The ordinance only regulates an economic

transaction—the sale of tobacco products below the listed price.  It does not

restrict the dissemination of pricing information and thus, it does not violate

the First Amendment.[5]

---

[5] Plaintiffs contend that in <u>Bailey v. Morales</u>, 190 F.3d 320 (5th Cir. 1999) and
<u>Discount Tobacco City & Lottery Inc. v. United States</u>, the Fifth and Sixth
Circuit Courts of Appeals "recognized that offering a rebate, discount, or free
gift—with or without a coupon—in connection with a purchase is speech
protected by the First Amendment."  Plt. Joint Memorandum in Support of
Motion for Summary Judgment, at 6-7.  The court finds neither one of these
cases to be persuasive.  In <u>Bailey</u>, the Fifth Circuit considered an as applied
challenge by chiropractors to a state statute that prohibited chiropractors and
other service professionals from soliciting employment. 190 F.3d at 321.  The
court found that the statute violated the First Amendment because it
prohibited a wide-range of advertising techniques that included solicitations as
well as marketing promotions, such as free trials or rebates.  <u>Id</u>. at 325.
However, this factually dissimilar case provides little guidance on whether a
city may prohibit pricing practices that prevent tobacco manufacturers and
retailers from selling cigarettes and tobacco products below the listed price.
<u>Discount City Tobacco</u> at least concerns the area of tobacco regulation.  In this
case, the Sixth Circuit rejected a host of challenges to the Family Smoking

Accordingly, the challenged city ordinance lawfully prohibits tobacco manufacturers and retailers from using the pricing practices of accepting coupons and price reduction instruments (§ 17.176.1(b)(1)) as well as providing multi-pack discounts (§ 17.176.1(b)(2)).  See National Association of Tobacco Outlets, Inc., 731 F.3d at 77.  Moreover, the court finds that the two additional restrictions on discount pricing unique to the New York City Ordinance—the prohibition on the receipt of non-tobacco goods in exchange for the purchase of cigarettes or tobacco products (§ 17.176.1(b)(3)) and the prohibition on selling or offering to sell cigarettes or tobacco products below the listed price (§ 17.176.1(b)(4))—are permissible "forms of regulation that [do] not involve any restriction on speech."  44 Liquormart, Inc., 617 U.S. at 507.  These regulations are different variations of the same strategy—regulating the sale of cigarettes and tobacco products below the listed price—that simply approach the issue in a different manner.

Additionally, as the First Circuit found in National Association of Tobacco Outlets, it is not just the restrictions on pricing that do not violate the First Amendment, but also the restrictions on offers to engage in any of the pricing discounts that do not violate the First Amendment.  Id. at 78.  In the case at bar, the ordinance regulates offers to sell cigarettes and tobacco products

Prevention and Tobacco Control Act.  Yet, the court found that one provision of the Act impermissibly restricted the First Amendment rights of tobacco manufacturers and retailers—namely, the provision prohibiting continuity programs. 674 F.3d at 518.  However, continuity programs, which reward customers for their purchases largely in the same way as a frequent flyer program—loyal customers collect points which they can later redeem for goods and merchandise—are not relevant to the case at bar.

through multi-package discounts, offers to provide a non-tobacco product in exchange for the purchase of cigarettes or a tobacco product, and offers to sell cigarettes and tobacco products below the listed price.  N.Y.C. Admin. Code § 17-176.1 (b)(2-4).[6]

In their filings with the court, plaintiffs have emphasized that the ordinance impermissibly restricts commercial speech in that it prevents them from offering to sell cigarettes and tobacco products below the listed price.  The court does not find this argument to be persuasive.  The court has already found that the city may lawfully restrict the sale of cigarettes and tobacco products below the listed price.  Accordingly, the Supreme Court has made clear that the "government may ban commercial speech related to illegal activity."  Central Hudson, 447 U.S. at 563-564.  The Supreme Court has added that "offers to engage in illegal transactions are categorically excluded from First Amendment protection."  United States v. Williams, 533 U.S. 285, 297 (2008).  In this case, the offers that are restricted by the ordinance are offers to engage in an unlawful activity—namely, the sale of cigarettes and tobacco products below the listed price.  Thus, the ordinance lawfully prohibits retailers from offering what the ordinance explicitly forbids them to do.  See National Association of Tobacco Outlets, 731 F.3d at 78.

**Federal Preemption**

---

[6] Notably, § 17.176.1(b)(1) does not prohibit retailers from offering to accept coupons or price reduction instruments.

Plaintiffs' second challenge to the ordinance is that it is preempted by the Federal Cigarette Labeling and Advertising Act ("Labeling Act"), 15 U.S.C. § 1331.  Once again, in considering this issue, the court finds persuasive the analysis by the First Circuit in National Association of Tobacco Outlets, Inc. v. City of Providence, Rhode Island, 731 F. 3d 71, where the First Circuit considered a nearly identical challenge and found that the Labeling Act did not preempt the Providence ordinance.  This court finds that the Labeling Act does not preempt the challenged New York City ordinance.

In passing the Labeling Act, Congress set out "to establish a comprehensive Federal program to deal with cigarette labeling and advertising." 15 U.S.C. § 1331.  The Labeling Act requires that cigarette manufacturers and retailers alert consumers to the adverse health effects of cigarette smoking by including a warning notice on each package of cigarettes as well as in each advertisement for cigarettes.  Id. at § 1331(1).  In an effort to protect commerce and the national economy, Congress mandated there may not be "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health."  Id. at § 1331(2).

Accordingly, in 15 U.S.C. § 1333, the Labeling Act prescribes the content and format of the health warnings that are required to appear on cigarette packages and in cigarette advertisements.  The Labeling Act includes a list of permissible warnings that manufacturers and retailers may include on their cigarette packages and advertisements, such as "**WARNING**: Cigarettes are

16

addictive," "**WARNING**: Cigarettes cause cancer," and "**WARNING**: Smoking can kill you." Id. at §§ 1333(a)(1) & 1333(b)(1).  The Labeling Act also mandates the placement of the warning requirement and the typography in which it must be written for both cigarettes packages and advertisements.  Id. at §§ 1333(a)(2) & 1333(b)(2).

Congress included a preemption provision in the Labeling Act to protect its determinations.  15 U.S.C. § 1334.  The preemption provision provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes, the packages of which are labeled in conformity with the provisions of this chapter." Id. at § 1334(b).

However, in 2009, Congress enacted an exception to the § 1334(b) preemption provision that permits states and local governments to restrict certain advertising and promotional activity by tobacco manufacturers and retailers.  This exception, § 1334(c), provides that:

> Notwithstanding subsection (b), a State or locality may enact statutes and promulgate regulations, based on smoking and health... imposing specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes.

Id. at § 1334(c).  The 2009 addition to the preemption provision mandates that any state or local regulation concerning the promotion or advertising of cigarettes must meet two requirements in order to be exempt from preemption: (1) the regulation must be content-neutral; and (2) the regulation must only

17

concern the time, place, or manner of the advertising or promotion.  <u>See</u>
<u>National Association of Tobacco Outlets</u>, 731 F.3d at 80.

As a threshold matter, the court finds that the challenged ordinance
satisfies the second requirement of § 1334(c) in that it qualifies as a time,
place, or manner restriction on the sale of cigarettes and tobacco products.
Plaintiffs do not contest this issue.  The ordinance prohibits retailers and
manufacturers from providing consumers with promotions, multi-package
discounts, coupons, and giveaways.  These methods clearly constitute a
manner in which tobacco manufacturers and retailers advertise and promote
their products.

Plaintiffs focus their challenge on the first requirement of § 1334(c) and
contend that the ordinance impermissibly regulates the content of promotions
and advertising.  More specifically, plaintiffs argue that the ordinance restricts
the content of discount offers and other price communications to sell cigarettes
and tobacco products below the listed price.  For instance, under the
ordinance, manufacturers and retailers may no longer issue coupons,
promotions, or multi-pack discounts, which tell consumers that they are
"getting a deal" or a "bargain" by purchasing cigarettes or tobacco products.
According to plaintiffs, Congress intended to preempt this type of regulation as
it affects the content of tobacco advertising and promotion.

However, in its argument, plaintiffs mistakenly rely upon the assumption
that the content prohibition of § 1334(c) concerns the regulation of pricing.

Instead, this court finds, as the First Circuit did in <u>National Association of Tobacco Outlets</u>, 731 F.3d at 79-81, and as the Second Circuit did in <u>23-34 94th Street Grocery</u>, 685 F.3d at 184-185, that the content prohibition of § 1334(c) concerns content relating to the inclusion of health information on cigarette packages.  As the First Circuit explained, this understanding "is consistent with the overall purpose of the Labeling Act's preemption provision, which is to ensure that federal regulation in this respect is not 'impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.'" <u>National Association of Tobacco Outlets</u>, 731 F.3d 80-81 (quoting 15 U.S.C. § 1331).  Similarly, this court's summary of the different sections of the Labeling Act, <u>see</u> <u>supra</u> at 16-18, demonstrates that the Act is singularly focused on the content of health warnings on cigarette packages and advertisements.

In arriving at its understanding of § 1334(c), the First Circuit largely relied upon the analysis by the Second Circuit in <u>23-34 94th Street Grocery</u>, 685 F.3d. 174.  The Second Circuit was the first Federal Circuit Court of Appeals to interpret § 1334(c).  In <u>23-34 94th Street Grocery</u>, the Second Circuit considered a challenge to a New York City ordinance that required tobacco retailers to prominently display tobacco health warnings and smoking cessation signage produced by the New York City Department of Health.  685 F.3d. at 179.  While the ordinance at issue in <u>23-34 94th Street Grocery</u> is different than the challenged ordinance in the case at bar, it is the analysis by

19

the Second Circuit and in particular, its examination of the scope and purpose of the exception to the Labeling Act's preemption provision, that is central to this court's holding.

The Second Circuit found that the city could not require manufacturers or retailers to display supplemental content at the point of purchase, because the Labeling Act specifically preempts state regulation addressing the health risks associated with smoking.  Id at 185.  The Second Circuit explained that the Labeling Act "contemplates that Congress, and only Congress, will amend the content of warnings required of manufactures to educate consumers… without interference or supplementary efforts by state or local authorities."  Id. The court added that "[a]llowing state or local authorities to mandate supplementary warnings on or near cigarette displays risks the creation of 'diverse, nonuniform, and confusing' regulations."  Id. (quoting 15 U.S.C. § 1331(2)(B)).

After finding the ordinance in question to be preempted by federal law, the Second Circuit provided what appears to be a cautionary warning, advising that legislators and courts should not read the opinion as prohibiting local governments from regulating the sale of tobacco products.  The Second Circuit explained that under § 1334(c), "states and localities remain free to impose time, place, and manner restrictions on the advertising of cigarettes, and to engage in anti-smoking campaigns using their own resources.  Our holding today should not be read to curtail in any way state and locally funded efforts

to further educate consumers and counter cigarette advertising and promotion." Id.

This court, as the First Circuit did in National Association of Tobacco Outlets, finds that the ordinance in question is one of these permissible forms of regulation contemplated by the Second Circuit.  The ordinance (1) is a lawful restriction on the manner in which tobacco manufacturers and retailers advertise and promote their products and (2) does not regulate the content of cigarette sales and advertising as it relates to health warnings.  See National Association of Tobacco Outlets, 731 F.3d at 80 (discussing requirements to qualify for § 1334(c), the exception to the preemption provision).  Instead, the ordinance is content neutral as it merely regulates the sale and offer to sell cigarettes below the listed price.  Accordingly, the court finds that the ordinance is not preempted by the Labeling Act.

## State Preemption

Plaintiffs' final challenge to the ordinance is that it is preempted by New York State Public Health Law § 1399-bb, a detailed state statute that regulates the sampling and free distribution of tobacco products and that expressly preempts local governments from regulating this area of law.  Plaintiffs argument is that in § 1399-bb, the state Legislature addressed both free and partially discounted tobacco products and that since the challenged city ordinance also addresses both free and partially discounted products, the court should find that the ordinance is preempted by § 1399-bb.

21

However, plaintiffs' argument misses the mark.  While both the ordinance and § 1399-bb address tobacco regulation, the court finds that § 1399-bb does not preempt the ordinance because ultimately, § 1399-bb and the ordinance regulate two different subjects.  § 1399-bb *only* addresses the sampling or the distribution of free tobacco products; it does not, as plaintiffs' contend, address partially discounted tobacco products.  Similarly, the ordinance *only* addresses the sale of partially discounted cigarettes and tobacco products (i.e. sales below the listed price); it does not, as plaintiffs' contend, address the distribution of free cigarettes and tobacco products.  Thus, there is no conflict between the ordinance and § 1399-bb, and the court finds that the ordinance is not preempted.

In this analysis, the court first reviews general principles of New York State preemption law.  Local governments, such as New York City, only have the lawmaking powers that the state legislature has granted to them.  See DJL Restaurant Corporation v. City of New York, 96 N.Y.2d 91, 94 (2001).  Article IX, § 2(c) of the New York State Constitution provides that "every local government shall have the power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law... except to the extent that the legislature shall restrict the adoption of such a local law."  Accordingly, there are two firm restrictions on the authority of the local government: (1) it may not exercise its police power by adopting a local law that is inconsistent with constitutional or general law; and (2) it may not legislate when the State Legislature has restricted such an exercise by preempting the

area with regulation.  See New York State Club Association v. City of New York, 69 N.Y. 2d 211, 217 (1987).

Preemption may be express or implied.  Id.  Express preemption occurs when the Legislature expressly assumes full regulatory responsibility in a field by including a preemption clause in a statute.  Implied preemption occurs when the Legislature has not explicitly expressed its desire to preempt.  See Albany Area Builders Association v. Town of Guilderland, 74 N.Y. 2d 372, 377 (1989).  "This intent may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for state-wide uniformity."  Id.  When the Legislature has preempted an entire field of law, a local law that attempts to regulate the same subject matter is inconsistent with the state's interest if it either "(1) prohibits conduct which the state law accepts or at least does not specifically proscribe or (2) imposes restrictions beyond those imposed by the state law."  Vatore v. Commissioner of Consumer Affairs, 83 N.Y.2d 645, 649 (1994).

### *Whether the New York State Legislature intended to address partially discounted cigarettes and tobacco products*

In determining whether the legislature intended to preempt the regulation of partially discounted tobacco products, the court looks to both the text of the statute as well as the legislative history surrounding its passage. See Riley v. County of Broome, 95 N.Y. 2d 455, 463 (2000).  Ultimately, both the text of § 1399-bb as well as the legislative history surrounding its passage, demonstrate that the Legislature was only concerned with regulating the

23

sampling and free distribution of tobacco products.  As neither the text of the statute nor the legislative history addresses partially discounted products, the Legislature could not have intended to preempt local regulation of tobacco discounting practices, such as the challenged ordinance.

In 1992, the New York State Legislature established a detailed statutory scheme in the New York Public Health Law—Article 13 F, Regulation of Tobacco Products, Herbal Cigarettes and Smoking Paraphernalia: Distribution to Minors—to address the sale and distribution of tobacco products.  Within this scheme, the Legislature included sections on the sale of tobacco products to minors (§ 1399-CC), the sale of tobacco products from vending machines (§ 1399-DD), out-of packages sales and minimum package sales (§ 1399-GG), and the section at issue in the present litigation, the "Distribution of Tobacco Products or Herbal Cigarettes without charge" (§ 1399-bb).  See New York Public Health Law § 1399.

In enacting § 1399-bb, the Legislature created a framework for regulating the sampling and free distribution of tobacco products.  First, the Legislature set forth the following general regulation prohibiting the distribution of (1) free tobacco products and (2) coupons which are redeemable for tobacco products:

1. No person engaged in the business of selling or otherwise distributing tobacco products or herbal cigarettes for commercial purposes, or any agent or employee of such person, shall knowingly, in furtherance of such business:

(a) distribute without charge any tobacco products or herbal cigarettes to any individual, provided that the distribution of a package

containing tobacco products or herbal cigarettes in violation of this subdivision shall constitute a single violation without regard to the number of items in the package; or

(b) distribute coupons which are redeemable for tobacco products or herbal cigarettes to any individual, provided that this subdivision shall not apply to coupons contained in newspapers, magazines or other types of publications, coupons obtained through the purchase of tobacco products or herbal cigarettes or obtained at locations which sell tobacco products or herbal cigarettes provided that such distribution is confined to a designated area or to coupons sent through the mail.

New York Public Health Law § 1399-bb(1).

Notably, while the Legislature set forth a general prohibition on the sampling and free distribution of tobacco products, the Legislature also expressly allowed for the distribution of coupons via certain media or in certain settings:  (1) "coupons contained in newspapers, magazines or other types of publications," (2) "coupons obtained through the purchase of tobacco products or herbal cigarettes or obtained at locations which sell tobacco products or herbal cigarettes," and (3) "coupons sent through the mail."  § 1399-bb(1)(b).

Second, the Legislature then built upon these enumerated exceptions by mandating certain locations where the provisions of § 1399-bb(1) would not apply and retailers, or manufacturers, could distribute free tobacco products as well as coupons redeemable for tobacco products:

2. The prohibitions contained in subdivision one of this section shall not apply to the following locations:

(a) private social functions when seating arrangements are under the control of the sponsor of the function and not the owner, operator, manager or person in charge of such indoor area;

(b) conventions and trade shows; provided that the distribution is confined to designated areas generally accessible only to persons over the age of eighteen;

(c) events sponsored by tobacco or herbal cigarette manufacturers provided that the distribution is confined to designated areas generally accessible only to persons over the age of eighteen;

(d) bars as defined in subdivision one of section thirteen hundred ninety-nine-n of this chapter;

(e) tobacco businesses as defined in subdivision eight of section thirteen hundred ninety-nine-aa of this article;

(f) factories as defined in subdivision nine of section thirteen hundred ninety-nine-aa of this article and construction sites; provided that the distribution is confined to designated areas generally accessible only to persons over the age of eighteen.

§ 1399-bb(2)(a-f).

Third, in § 1399-bb, the Legislature included the following two provisions in order to regulate the sampling and free distribution of tobacco products as permitted by § 1399-bb(2).

3. No person shall distribute tobacco products or herbal cigarettes at the locations set forth in paragraphs (b), (c) and (f) of subdivision two of this section unless such person gives five days written notice to the enforcement officer.

4. The distribution of tobacco products or herbal cigarettes pursuant to subdivision two of this section shall be made only to an individual who demonstrates, through a driver's license or other photographic identification card issued by a government entity or educational institution indicating that the individual is at least eighteen years of

age. Such identification need not be required of any individual who
reasonably appears to be at least twenty-five years of age; provided,
however, that such appearance shall not constitute a defense in any
proceeding alleging the sale of a tobacco product or herbal cigarette to
an individual.

§ 1399-bb(3).  Together, § 1399-bb(2),(3),&(4), work to ensure that tobacco

retailers and manufacturers may only distribute free tobacco products in

locations where there will not be any consumers under the age of eighteen.

Finally, the Legislature then chose to protect the judgments that it made

in § 1399-bb with an express preemption clause that it passed in a separate

piece of legislation that accompanied § 1399:

The provisions of section 1399-bb of Article F of the public health law
added by section three of this act, shall govern and take precedence over
the provisions of any local law, ordinance, rule, regulation, resolution,
charter or administrative code hereafter enacted by any political
subdivision of the state.

1992 N.Y. Laws 2219, 2223, ch. 799 § 6.  The Court of Appeals has interpreted

this preemption clause as a "*narrow* express preemption provision giving

preclusive effect to section 1399-bb of article 13-F, governing the distribution

of <u>tobacco products without charge</u>."  <u>Vatore</u>, 83 N.Y. 2d at 649-650 (emphasis

added).

In the legislative findings that, along with the express preemption

provision, accompanied § 1399-bb, the Legislature clearly indicated that the

purpose of § 1399-bb was to regulate the sampling and distribution of tobacco

products without charge:

> [T]he legislature finds that the <u>unrestricted distribution or furnishing of tobacco products to members of the general public without charge</u> encourages the use of tobacco products by minors and is detrimental to the public health... Therefore, it is the purpose of this act ... to restrict the distribution of tobacco products for purposes of encouraging the use or sale of such products..."

1992 N.Y. Laws 2219, 2223, ch. 799 § 1 (emphasis added).

Thus, the text of the statute as well as its accompanying express preemption clause and legislative findings, demonstrate that in enacting § 1399-bb, the Legislature only intended to regulate the distribution of tobacco products without charge and to preempt local governments from passing conflicting laws on this narrow subject.  There is no mention anywhere in the text of the statute of potentially discounted cigarettes or tobacco products.  Notably, in § 1399-bb(1)(b), the Legislature allowed for tobacco manufacturers to "distribute coupons which are redeemable for tobacco products" via certain media and in particular settings.  This provision has been the source of much debate between the parties.  But, it is clear that the coupons at issue in this statute, as will be discussed in greater detail below, <u>see</u> <u>infra</u> at 30-31, are coupons that provide consumers with a free tobacco product.  They are not the type of coupons, which are one of the many price reduction instruments that the challenged ordinance prohibits.

Along these lines, the legislative history surrounding the passage of § 1399-bb, confirms that § 1399-bb only concerns the sampling and distribution of tobacco products without charge.  Assemblyman Alexander P. Grannis served as the primary sponsor for § 1399 and introduced the

28

legislation in Assembly Bill 3900-E.  Assemblyman Grannis drafted a

memorandum in support of Assembly Bill 3900-E, and its Senate companion

bill, S.5374-A, that demonstrates that the legislation clearly intended to

regulate the sampling and free distribution of tobacco products:

> The bill also addresses the issue of <u>free distribution of tobacco products</u>.
> The <u>unrestricted free distribution of cigarettes</u> all too often results in
> distribution of tobacco products to minors and is an inducement to
> smoke.  The <u>free distribution of cigarettes</u> also encourages non-smokers
> to start smoking and encourages smokers to continue.  <u>This bill limits</u>
> <u>free distribution</u> to defined situations and controls distribution from a
> focus point…Tobacco manufacturers who participate in a given event
> may distribute samples under the circumstances specified… Under the
> bill, people who wish a <u>free tobacco product sample</u> will have to approach
> the product rather than having the product approach the person as
> distribution now most often occurs.

Memorandum in Support of A. 3900-E, (emphasis added), Ex. B. to

Supplemental Declaration of Nicholas Ciappetta Concerning State Law

Preemption.

During the Assembly debate on New York Public Health Law § 1399,

Assemblyman Grannis similarly described the bill as an effort to prohibit the

sampling and free distribution of tobacco products:

> [T]he <u>distribution of free sampling</u> would be banned in New York State
> except at private social functions and tobacco businesses and several
> other designated areas; and in those cases, everybody that wants to do
> free sampling, wants to hand out free samples of cigarettes[s] would have
> to provide five days' written notice to the local health department and
> would require a proof of age for every person to whom a free sample was
> to be given.

NYS Assembly July 29, 1992, at 166-167 (emphasis added), Ex. C to Supplemental Declaration of Nicholas Ciapetta Concerning State Law Preemption.

During its debate over the law, the Legislature only addressed coupons in so far as it recognized that in its effort to regulate the sampling and distribution of free tobacco products, it would also need to regulate the distribution of coupons that could be redeemed for free tobacco products. An assembly memorandum in support of Assembly Bill 3900-D, an earlier draft of Assembly Bill 3900-E, explained that "prohibiting the distribution of redeemable coupons will prevent use of that technique as a means of avoiding a ban that only encompassed the distribution of [tobacco] products."  Assembly Memorandum in Support of A. 3900-D, Ex. H to Supplemental Declaration of Nicholas R. Ciapetta Concerning State Law Preemption.  For example, without the provisions surrounding coupons (§ 1399-bb(2)), a tobacco manufacturer, while unable to provide a consumer with a free pack of cigarettes, could provide the same consumer with a coupon that could be redeemed for a free pack of cigarettes.  Thus, by including coupons in § 1399-bb, the Legislature did not intend to regulate one of the pricing practices at issue in the present litigation, such as coupons for $1 off of the listed price for a pack of cigarettes; rather, the Legislature intended to prohibit coupons that could be redeemed for free tobacco products.

Finally, in signing the bill into law, Governor Cuomo reiterated that in enacting § 1399-bb, the Legislature and the Executive intended to regulate the sampling and free distribution of tobacco products.   In his Memorandum of Approval, Governor Mario Cuomo explained that the bill was necessary because the "free distribution of cigarettes inevitably results in distribution of tobacco products to minors and is an inducement to smoke.  The free distribution of cigarettes also encourages non-smokers to start smoking and encourages smokers to continue."  Memorandum filed with Assembly Bill Number 3900-E, Aug. 7, 1992, Ex. D to Supplemental Declaration of Nicholas R. Ciapetta Concerning State Law Preemption.  Governor Cuomo then explained that that bill will correct this problem by "prohibit[ing] sellers and distributors of tobacco products from distributing tobacco products without charge, except for distributions at certain locations, and subject to notification of an enforcement officer."  Id.

Plaintiffs dispute this characterization of the legislative history. Plaintiffs' contend that in addition to choosing to regulate the distribution of free tobacco products, in enacting § 1399-bb, the legislature deliberately chose not to regulate and thus, to allow partially discounted tobacco sales, such as the pricing practices at issue in the present litigation.  Consequently, according to plaintiffs, in enacting the challenged ordinance and allowing for the regulation of discount pricing practices, the city has impermissibly regulated a body of law that the state has chosen to allow and preempted local governments from regulating.  See Vatore, 83 N.Y.2d at 649.

31

In advancing this argument, plaintiffs rely upon an early draft of the law, Assembly Bill 3900-D § 1399-bb.  In this version of the law, the New York State Assembly provided that no tobacco retailer or manufacturer shall:

> (a) distribute without charge or <u>for a charge less than basic cost</u> any tobacco products or herbal cigarettes to any individual, provided that the distribution of a package containing tobacco products or herbal cigarettes in violation of this subdivision shall constitute a single violation without regard to the number of items in the package

Assembly Bill 3900-D § 1399-bb(1)(a) (emphasis added), Ex. A. to Affirmation of Michael Edney Concerning State Law Preemption.  The relevant term in plaintiffs' analysis is "for a charge less than basic cost."  The bill defined "basic cost" as "a nominal price, or any other price less than the costs of the distributor, plus the amount of any taxes not included in such costs."  <u>Id</u>. at § 1399-aa(3).  Plaintiffs argue that the "less than basic cost" provision encompasses all of the discounting practices at issue in the present litigation.  Thus, if this draft of the bill had been enacted, according to plaintiffs, this provision would have prohibited all of plaintiffs' discounting practices.

However, upon receiving the bill from the State Assembly, the New York State Senate made a variety of changes to the law as originally proposed, including removing the "less than basic cost" provision.  <u>See</u> New York State Senate Bill 5734-A § 1399-bb(a), Ex. C to Affirmation of Michael Edney Concerning State Law Preemption.  The Assembly accepted this revision in its final version of the legislation.  <u>See</u> Assembly Bill 3900-A, § 1399-bb(1)(a).

Plaintiffs contend that the Legislature's decision to remove the "less than basic cost" provision amounted to a decision by the Legislature to allow for tobacco manufacturers and retailers to engage in the pricing practices at issue in the present litigation.  Plaintiffs' argue that this determination was then protected by the express preemption clause.

However, this argument must fail for two reasons.  First, plaintiffs' argument cannot survive, because plaintiffs' fundamentally misunderstand the term "less than basic cost."  The Legislature did not originally include the "less than basic cost" provision to regulate the type of discounting practices at issue in the present litigation.  Instead, similar to its decision to include a prohibition on the distribution of coupons redeemable for tobacco products, the Legislature decided to include the "less than basic cost" provision in order to ensure that tobacco manufacturers and retailers could not circumvent the prohibition on the free distribution of tobacco products by offering tobacco products to consumers at a nominal price.  In an Assembly Memorandum in support of the earlier legislation, the Legislature advanced this position:

> Free distribution of cigarettes inevitably results in distribution of tobacco products to minors and is an inducement to smoke.  The free distribution of cigarettes also encourages non-smokers to start smoking and encourages smokers to continue.  <u>Restricting the distribution of tobacco products at less than basic cost will prevent distributors from avoiding the ban on free distribution by "selling" tobacco products for a penny, a nickel or some other minimal amount</u>.  Similarly, prohibiting the distribution of redeemable coupons will prevent use of that technique as a means of avoiding a ban that only encompassed distribution of products.

Memorandum Filed in Support of Assembly Bill 3900-D (emphasis added), Ex.
H to Supplemental Declaration of Nicholas R. Ciapetta Concerning State Law
Preemption.  Ultimately, for the Legislature, "less than basic cost" really meant
a nominal price, such as a penny or nickel.  Thus, the Legislature never so
much as considered, let alone sanctioned, the pricing practices at issue in the
present litigation.

Second, even assuming that the "less than basic cost" provision includes
the pricing practices at issue in this litigation, plaintiffs' argument must fail
because it is incorrect as a matter of law.  Plaintiffs contend that when the
Legislature has considered imposing an additional restriction in a statute,
declined to do so, and then enacted the statute with an express preemption
clause, that local governments cannot then adopt a regulation of the same type
that the Legislature rejected.  However, the Court of Appeals has held that
"legislative inaction, because of its inherent ambiguity, affords the most
dubious foundation for drawing positive inferences." Clark v. Cuomo, 66
N.Y.2d 185, 191 (1985); See also, New York State Health Facilities Association,
Inc. v. Axelrod, 77 N.Y.2d 340,348 n.2 (1991); Brooklyn Union Gas Company v.
New York State Human Rights Appeal Board, 41 N.Y.2d 84, 89-90 (1976).
Thus, despite plaintiffs' arguments to the contrary, this court will not make any
inferences as to the Legislature's intention in removing the "less than basic
cost" provision from § 1399-bb(1)(a).  This court does not conclude that by
removing this provision, the legislature intended to sanction the pricing
practices that are prohibited by the challenged ordinance.

**Whether the ordinance regulates the distribution of free cigarettes and tobacco products**

Despite the fact that the court has found that § 1399-bb does not preempt the city's regulation of discounted tobacco products, the court could still find that the ordinance is preempted by § 1399-bb if the court were to conclude, as plaintiffs argue, that the ordinance prohibits the distribution of free tobacco products.  There is no doubt that the city is preempted from regulating the free distribution of cigarettes and tobacco products.  See 1992 N.Y. Laws ch. 799 § 6.  However, the court finds that the ordinance does not regulate the free distribution of cigarettes and tobacco products.

This issue can be dealt with quickly and does not require detailed analysis of the text of the ordinance or of the legislative history surrounding its passage.  The challenged ordinance—§ 17.176.1—will be part of § 17.176 of New York City's Administrative Code.  § 17.176, entitled "Prohibitions on the distribution of tobacco products," already addresses the distribution of free cigarettes and tobacco products in New York City.  This regulation essentially codifies New York Public Health § 1399-bb as part of the New York City Administrative Code.  § 17.176 prohibits the distribution of free, or nominally priced, cigarettes and tobacco products in public places and at public events.  N.Y.C. Admin. Code § 17.176(b).  Like § 1399-bb, § 17.176 allows for tobacco manufacturers and retailers to distribute free cigarettes and tobacco products at private events, or in stores that sell tobacco products to the general public.  Id. at § 17.176(c)(i-ii).

The court reads these two regulations—§ 17.176 and § 17.176.1—together in an effort to give meaning to each provision and to harmonize each section with the other.  See Friedman v. Connecticut General Life Insurance Company, 9 N.Y. 3d 105, 115 (2007); see also McKinney's Consolidated Laws of New York, Book 1, Statutes § 97.  Thus, it is clear that the two sections regulate different areas—§ 17.176 regulates the free distribution of cigarettes and tobacco products and § 17.176.1 regulates the sale of cigarettes and tobacco products below the listed price.  Together, the two ordinances work to regulate tobacco sales in New York City.

Therefore, as § 17.176.1 does not regulate the free distribution of tobacco products, the court finds that it is not preempted by § 1399-bb.

## Conclusion

The court grants the city's motion for summary judgment in its entirety.  Accordingly, the court denies plaintiffs' request for a declaratory judgment and for a permanent injunction.

This opinion resolves the following motions listed as item numbers 22, 60, and 63 on the docket.

SO ORDERED.

Dated:  New York, New York
      June 18, 2014

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/18/14

36